## Harbor Point Club House Association v. L. C. Young.

1. CONTRACTS—*May be Consummated by Correspondence—Rescission.*—Where a contract between parties is consummated by a series of correspondence, neither party has a right to rescind it on the ground that the contract is not complete, because the other party refuses to sign written articles of agreement.

Assumpsit, for a breach of contract. Error to the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1901. Affirmed. Opinion filed December 10, 1901.

JAMES M. GRAHAM and ALBERT SALZENSTEIN, attorneys for plaintiff in error.

LLOYD G. KIRKLAND and ROB. H. PATTON, attorneys for defendant in error.

MR. PRESIDING JUSTICE HARKER delivered the opinion of the court.

Defendant in error brought this suit to recover for breach of an alleged contract with the plaintiff in error, retaining him as manager of its hotel at Harbor Springs, Michigan, for the summer season of 1899, and recovered a judgment for $1,270. The cause was tried by the court without a jury.

Defendant in error contended upon the trial that evi-

dence of a contract of employment was furnished by certain correspondence which passed between him and F. W. Tracy, president of the association. The trial court sustained the contention. Over thirty letters, commencing with December, 1898, and running through the months of January, February, March, April and May, 1899, and several telegrams, were introduced. Among them was a letter from Tracy, dated February 10, 1899, notifying defendant in error that he had been elected manager for the season at a salary of $1,000, for himself and wife (as housekeeper), in accordance with a previous proposition, and instructing him to retain help. The letter instructed him to report to Tracy the amount of salaries demanded by chef, room-clerk and head waiter, and to confer with the association's assistant secretary, G. F. Stearns, of Big Rapids, Michigan, about advertising. Defendant in error, by letter and telegram, notified Tracy of his acceptance, and asked advice as to when the house would open, to which Tracy replied that it would open on June 20th and close about September 30th. Other correspondence, relating chiefly to help, then followed. On March 23d defendant in error wrote to Tracy that he had selected a chef at $125, a head waiter at $100, and a room clerk (his son) at $100 per month, but he had deferred making contracts with them until he should hear from Tracy. To that letter Tracy replied that the selections were satisfactory, but that he wanted his son to accept the position of room clerk at $75 per month. On the 6th of April Tracy again wrote defendant in error, inclosing a written contract which had been signed in duplicate by Tracy, and requesting defendant in error to sign. Defendant in error objected to several matters appearing in the written contract, and upon suggestion of Tracy, made some changes, chief of which were the striking out of a clause— the association to dismiss him as manager on one week's notice—and substituting for the name of Mrs. L. C. Young, as housekeeper, the words, "a competent woman." The changes were not acceptable to Tracy, and considerable other correspondence followed, resulting in a refusal of the

association to allow the defendant in error to enter upon its service as manager.

As grounds for a reversal of the judgment, plaintiff in error urges : First, that there never was a complete contract of employment; second, that defendant in error did not show that he was ready and willing to furnish the service of his wife as housekeeper; third, that he employed his son as room clerk at a salary of $100 per month against the express direction of the plaintiff in error, which was sufficient grounds for discharge; fourth, the judgment is excessive in including the value of the services of a housekeeper.

Plaintiff in error bases its contention that the contract was not complete, upon the ground that the defendant in error refused to sign the written articles of agreement sent him by Tracy. As we view the correspondence between Tracy and the defendant in error, the contract was complete long before any mention was made of a written agreement. By his letter of February 10th, Tracy, in behalf of the association, tendered the defendant in error the position of manager of the hotel for the season at a salary of $1,000, including his wife as housekeeper. By letter, dated February 17th, and by telegram, dated February 18th, defendant in error notified Tracy of his acceptance, and the entire correspondence between the parties from then until the 6th of April, the date of the first mention of a written contract, shows that each regarded the contract of employment as complete. All the essential elements of a contract were covered by the letters of proposal and acceptance. We can not agree with counsel that the parties contemplated entering into written articles. That is refuted by the language of Tracy in his letter inclosing the articles, in which he says : " I suppose you will have no objection to signing."

It nowhere appears in the evidence that defendant in error was not ready and willing to furnish his wife as housekeeper. He had agreed to do so, and there is nothing indicating that he had anything to the contrary in mind, excepting that in the alteration of the draft of the written

contract sent him by Tracy, he substituted for the name of his wife the words, "a competent woman," and that, in view of the correspondence, that should be regarded more in the nature of a request to be allowed to make such substitution than a refusal or unwillingness for her to act in that capacity. After receiving letters from Tracy to the effect that the association would not receive his services and that it would organize the force to run the house independent of him, defendant in error wrote Tracy that his plans had all been made and the help engaged. Nothing further was required of him by way of notice to the association of the readiness and willingness of his wife to act as housekeeper. Mt. Hope Cemetery Association v. Weidenmann, 139 Ill. 77. The undertaking was only to furnish his wife as housekeeper in the event of his retention as manager, and the association's refusal to retain and continue him as manager, rendered performance by her in compliance with that undertaking impossible.

The employment of the son of the defendant in error as room clerk at $100 per month furnished no sufficient ground for discharge. In compliance with Tracy's letter of instructions, he selected the chef at $125, the head waiter at $100 and the room clerk at $100 per month, but before closing contracts with them, he notified Tracy, who replied that the selections were all right, but as the association had always paid $75 per month for a room clerk, he hoped defendant could see his way clear to have his son accept at that salary. There is nothing in any letter of Tracy approaching any further instruction upon the subject, and Tracy evidently was not seriously dissatisfied with the appointment at $100 per month, because after it had been decided to dispense with the services of the defendant in error, Tracy wrote, on the 8th day of May, that the association would retain the son as room clerk at the salary of $100 per month, if he desired. The employment of the son for $100 per month was not even made a pretext for the discharge of the defendant in error and assumed no form in the controversy until the trial. Really,

we are led, from the tone of some of Tracy's letters, to the conclusion that unfavorable reports as to the manner in which the defendant in error had conducted the Mexican Gulf Hotel at Pass Christian, Miss., was the cause of his discharge.

The amount of the judgment was not excessive. The defendant in error having contracted for the co-operation of himself and wife in service for the plaintiff in error was entitled to recover the salary which the plaintiff in error agreed to pay him for their joint service, $1,000 for the season, and as the evidence shows that it is the custom for manager and housekeeper of a hotel to receive board and lodging in addition to salary, the court properly allowed the value of the board to them.    Judgment affirmed.